SCHRAM *v.* PASCO.

1. RECEIVERS—APPOINTMENT—DANGER OF LOSS OR INJURY TO CORPUS.

A court may appoint a receiver of property in possession of a defendant under claim of right in rare instances where the corpus of the litigation is in imminent danger of loss or irreparable injury.

2. SPECIFIC PERFORMANCE—RECEIVER PENDENTE LITE.

In suit for specific performance of an option to sublease a theater and for an accounting where, admittedly, defendant was in rightful possession, and sworn answer admits the execution of the various instruments involved and disputes only the amount of rental sublessees were to pay, order appointing receiver to take charge of the property pending determination of suit was an infringement of defendant's rights.

Appeal from Wayne; Gillis (Joseph A.), J., presiding. Submitted June 4, 1942. (Docket No. 21, Calendar No. 41,987.) Decided July 1, 1942.

Bill by Wesley B. Schram and Louis Goldberg against Edward S. Pasco to construe a lease and for appointment of a receiver and other relief. From order appointing receiver, defendant appeals. Reversed and remanded.

*Wm. Henry Gallagher,* for plaintiffs.

*Shapero & Shapero,* for defendant.

CHANDLER, C. J. By virtue of the terms of a certain lease, dated October 2, 1940, between defendant and one Joseph Babiec, defendant became

the lessee of certain premises located in the city of Hamtramck, which were used for theater purposes and which have been referred to in this proceeding as the Campau theater. Defendant also was the lessee of another theater located in Hamtramck, said lease being dated August 25, 1938, and executed by Anna Slepski, individually and as guardian of Delphine Slepski, a' minor, Leonard Slepski, Angeline Kowalewski and Arthur Slepski. This property is known as the White Star Theater and the lease as the Slepski lease.

On March 13, 1941, plaintiffs entered into a written agreement with defendant which provided for the subleasing of the Campau theater to plaintiffs on certain stated terms and conditions. The agreement also granted an option to plaintiffs whereby they could become sublessees of the White Star theater upon proper notice to defendant of the intention to exercise such option. Relative thereto, the agreement provided:

"15.   The parties of the second part shall have the right and option to become the subtenants of the party of the first part of the premises known as 9227 Joseph Campau avenue, Hamtramck, Michigan, including the White Star theater, and hereinbefore described or designated as White Star premises, by notifying the party of the first part in writing, by delivering to him personally, or by registered mail, any time prior to February 1, 1942, of their intention to exercise said option to sublet the White Star premises, provided, however, that in the event said option is exercised by the parties of the second part, the same shall not become effective and operative until February 1, 1942, and parties of the second part shall not obtain possession until February 1, 1942, it being further agreed that subletting by the party

of the first part to the parties of the second part is
to be on the following terms and conditions:

"(a) That after the exercise of the option de-
scribed in the preceding paragraph and upon de-
livering of the possession of the premises the parties
of the second part are to pay to the party of the
first part the sum of $9,000, upon the receipt of
which the party of the first part will execute to the
parties of the second part a sublease of the White
Star premises.

"(b) That said sublease of the White Star
premises will be for a term of three years, com-
mencing February 1, 1942, at a monthly rental of
$400, payable in advance, subject to all of the terms
and conditions of the Slepski underlying lease, which
terms and conditions the parties of the second part
agree to faithfully perform and carry out for that
period.

"(c) That said sublease of the White Star prem-
ises will contain a clause giving the parties of the
second part the right and privilege to renew said
sublease for the remainder of the party of the first's
term in his underlying Slepski lease, at the same
monthly rental as provided for in said original lease,
and obtain any and all other rights the party of the
first part has under the original lease, and subject
to the same terms and conditions, provided, how-
ever, that no less than 60 days prior to the expira-
tion of the three-year term provided for in the sub-
lease, the parties of the second part, in writing, de-
livered in person or by registered mail, shall notify
the party of the first part of their intention to renew
the sublease for the unexpired portion of the party
of the first part's underlying Slepski lease.

"(d) That parties of the second part, for them-
selves, their heirs, executors, and administrators,
covenant and agree with party of the first part, his
heirs, executors, administrators, to perform and

faithfully carry out all of the terms, conditions, and agreements as contained in the Slepski underlying lease during the three-year term herein created; and in the event the said second parties shall exercise their option of renewal, pertaining to the White Star premises, for the remainder of the first party's underlying Slepski lease, said second parties further covenant and agree to carry out and perform the provisions of said underlying Slepski lease appertaining to the residue of the term therein created, required to be performed by the party of the first part, and do hereby assume and agree to faithfully fulfill all of the terms and conditions imposed upon the said Edward S. Pasco in said underlying Slepski lease and agree to fully pay, discharge and fulfill each and every obligation in said underlying Slepski lease to be performed by or on the part of Edward S. Pasco. * * *

"26. That the party of the first part will at any time upon request of the parties of the second part execute an assignment of the entire and/or a portion of the term of the Babiec lease of the parties of the second part. Provided, however, that Babiec consents thereto; and at any time after February 1, 1942, party of the first part will upon request of the parties of the second part execute an assignment of the entire and/or a portion of the term of the Slepski lease to the parties of the second part, subject to the provisions in the following paragraph.

"That the party of the first part will within a reasonable time, make a reasonable effort to obtain consent of the lessors of the Slepski lease to an assignment and/or sublease of the premises to the parties of the second part. That such consent shall include Wayne probate court's approval to the lease as so modified by Leonard Slepski, administrator of the estate of Anna Slepski, deceased, and by Leonard Slepski, guardian of estate of Delphine Slepski, a minor. That in the, event consent to the assignment

and/or sublease for the entire and/or portion of the term cannot be obtained, the party of the first part will give to the parties of the second part a management contract of said Slepski premises on the same terms and conditions herein mentioned and provided at $1 a year.

"27. That the party of the first part agrees to comply with the terms and conditions of the original underlying Babiec and Slepski leases including the payment of the rental promptly when due to the lessors."

The bill of complaint herein, filed on January 31, 1942, alleges the execution and material provisions of the aforementioned leases and agreements. The bill further alleges that on January 8, 1942, pursuant to the method provided in the agreement above quoted, plaintiffs gave notice of their intention to exercise the option granted and become sublessees of the White Star theater; and that pursuant to paragraph 15(a) of the agreement a tender of $9,000 was made and under paragraph 15(b) the sum of $400 was tendered in payment of the rent for the first month.

Defendant and plaintiffs each refused to execute the lease tendered by the other because of a dispute as to the amount of the monthly rental for the White Star premises to be paid by plaintiffs, defendant's proposed lease calling for a monthly rental of $800 and plaintiffs' proposed lease providing for the payment of $400 monthly.

The bill prayed for specific performance, an accounting, and for the appointment of a receiver pending determination of the cause. The question of the appointment of a receiver came on to be heard upon the bill of complaint and defendant's sworn answer thereto, and, as a result, the trial court appointed Louis Goldberg, one of the plain-

tiffs, as receiver, such appointment being conditioned on the deposit by him of the sum of $9,000 with the clerk of the court, the execution of a bond in the amount of $10,000, conditioned upon payment by plaintiffs to defendant of any sum found to be due on any sublease or assignment of lease that might be found to exist between the parties, and the execution of a receiver's bond in the amount of $1,000. The order also provided that the receiver should take possession of the premises forthwith.

This appeal attacks the order appointing the receiver, it being the claim of appellant that the court had no authority to make such appointment in view of the answer under oath and for other assigned reasons. The sworn answer admits the execution of the various instruments involved in the controversy and it appears from the pleadings that the only point of dispute concerns the amount of monthly rental that plaintiffs were to pay as sublessees of the White Star theater. They claim that it should be $400 per month. Defendant takes the position that the agreement of March 13, 1941, contemplated that the sublease should be on a rental basis of $800 per month in view of the various recitals in the agreement that plaintiffs would "fully pay, discharge and fulfill each and every obligation in said underlying lease to be performed by or on the part of Edward S. Pasco."

On this appeal we are not concerned with the merits of the controversy. The sole question for consideration is whether the court properly appointed the receiver.

In *Sanford* v. *Newell*, 204 Mich. 91, defendant had filed a sworn answer traversing in detail the allegations of the bill. The trial court appointed a receiver to take possession of the property involved

upon giving proper bond. Upon appeal, this court, while recognizing the power to appoint a receiver of property in possession of a defendant under claim of right in rare instances where the corpus of the litigation was in imminent danger of loss or irreparable injury, reversed and held for naught the order of the trial court, saying:

"When this order was made appointing a receiver and dispossessing defendant he had filed his answer fully meeting and denying under oath the equities of plaintiffs' bill and the case was ripe for hearing, no replication being now required. The general rule as to the effect of a verified answer on an application for appointment of a receiver prior to trial of the suit on its merits is stated as follows in 34 Cyc. p. 133:

" 'It is a well-established rule that plaintiff, the equities of whose bill have been fully met and denied, is not entitled to the appointment of a receiver, unless he overcomes the denials in such answer by further proof in support of his bill. In other words, where the equities of plaintiff's bill have been fully met and denied by a sworn answer on behalf of defendant, the court has no discretion and its appointment of a receiver in such case is unauthorized.' "

The *Sanford Case* controls the case at bar. There was no showing that irreparable injury was going to result unless the receiver was appointed. Admittedly defendant was in rightful possession of the premises, and it was a clear infringement of his rights to dispossess him.

Plaintiffs rely on *Payne* v. *Atterbury,* Harr. Ch. (Mich.) 414. Aside from other distinguishing features, it appeared in that case that irreparable

injury to plaintiff might ensue if a receiver was not appointed.

Plaintiffs argue that their right to possession is admitted by the answer; that the only issue is the amount of monthly rental the sublease should provide; and that it therefore appears that the equities of the bill have not been met by a sworn answer so as to bring the case within the rule of *Sanford* v. *Newell, supra.*

The bill prays for specific performance and that defendant be required to execute a lease providing for a monthly rental of $400. The bill and answer, therefore, put in issue the construction of the terms of the option agreement. If defendant's construction of that agreement should prevail, plaintiffs cannot maintain their bill and it follows that the equities and plaintiffs' right to the relief sought have been met by the sworn answer. This is not the time to construe the contract or decide the case on its merits.

The order appointing the receiver is reversed and held for naught and the case remanded for further proceedings. Appellant shall recover costs.

BOYLES, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.